Argued and submitted January 16, affirmed September 4, 1996,
petition for review denied April 8, 1997 (325 Or 247)

Harry LONSDALE,
*Appellant,*

*v.*

Rick SWART
and Wallowa County Chieftain, Inc.,
an Oregon corporation,
*Respondents.*

(93-03-10415; CA A85415)

922 P2d 1263

David C. Force argued the cause and filed the briefs for appellant.

John R. Barker argued the cause for respondents. With him on the brief was Bittner & Barker, P.C.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Plaintiff Harry Lonsdale sued defendants the Wallowa County Chieftain, Inc. (the Chieftain), a local newspaper, and Rick Swart, its editor, for defamation. The trial court dismissed Swart from the action on the ground that he had not properly been served with summons and complaint. It then entered summary judgment for the Chieftain on the merits of the defamation claim. Plaintiff appeals, arguing that the trial court erred both in dismissing Swart and in granting summary judgment for the Chieftain. We affirm as to both rulings.

The following facts are uncontested. In August 1991, plaintiff participated, along with group leader Ric Bailey and approximately 30 other persons, in a guided "float trip" in inflatable rafts on the Snake River, in the Hells Canyon area. Although plaintiff had previously run for the United States Senate on two occasions, he was not a candidate for any public office at the time of the Snake River float trip. At night, the rafters camped on the riverbank.

At some point during the trip, Dennis Gratton, a jet boat operator who was not part of plaintiff's group, surreptitiously watched the group and recorded its activities with a video camera equipped with a telephoto lens. Among the activities Gratton recorded were several members of the group—not including plaintiff—bathing and urinating in the river. Gratton sent the Chieftain a copy of the videotape of the bathing rafters.

In 1992, plaintiff again declared his candidacy for the United States Senate. On May 4, 1992, Swart called plaintiff's campaign office for a comment on the videotape of the float trip activities. Swart reached the campaign press secretary, Kathy McShea, who denied that plaintiff was on the trip, saying, as Swart later recalled: "I can assure you he was not on that trip, he wouldn't get involved in something like that." McShea explained to Swart that she had talked to Bailey, who she said told her that the video was apparently a political ruse prepared by plaintiff's opponents. Four days later, Swart talked to plaintiff about the trip. Plaintiff replied that he had been present on the float trip in August 1991.

On May 14, 1992, the Chieftain published in its "Opinion" section of the paper an article by Swart entitled "Harry Lies." The complete text of the article is as follows:

"Harry Lonsdale's admission that he was on a controversial float trip in Hells Canyon last summer raises serious questions about his qualifications for a seat in the U.S. Senate.

"Until last week Lonsdale, a Democrat who is trying to unseat incumbent Sen. Bob Packwood, denied that he was on the float trip which has become the subject of a complaint filed by Dennis Gratton of Boise, Idaho, who claims members of the float group engaged in excessive nudity, urinating in public, and other offensive and unruly behavior during their Aug. 28 trip down the wild and scenic Snake River.

"Lonsdale failed to acknowledge that he was on the trip until his whereabouts on Aug. 28 was [sic] confirmed by his ex-campaign manager, Rich McIntyre of Fort Klamath, Ore. Faced with this claim by a former Lonsdale insider, the candidate finally came clean, although he suggested his earlier claim was not [a] deliberate attempt to cover up the facts but 'miscommunication' on the part of his press secretary, Kathy McShea.

"Either the head doesn't know what the tail is doing or Mr. Lonsdale is a liar. We have every reason to believe the latter is the case.

"Lonsdale's present campaign manager suggested McShea's remarks ('I can assure you Harry Lonsdale was not on that trip.') was made in response to a 'leading question' on the part of this newspaper.

"Nothing could be farther from the truth. Our question to McShea couldn't have been any more clear and direct— Was Harry Lonsdale on the Snake River on or about Aug. 28 with Ric Bailey?

"If Lonsdale cannot be up front and honest about what his pals say was an innocent trip down the Snake River, how is he going to respond to questions of a more serious nature? By denying, and then admitting, he was present, Lonsdale did his friends a great disservice by raising the appearance of impropriety, Gratton's allegations notwithstanding.

"It is now clear that Harry Lonsdale is not the person he says he is and that his regard for the truth is beneath the office he seeks."

Two weeks later, plaintiff wrote the Chieftain and demanded that the paper retract or correct what he considered to be false statements about him contained in the May 14 article. The Chieftain declined to do so.

Plaintiff initiated this action for defamation on March 24, 1993. In his complaint, he alleged that two statements contained in the May 14, 1992, article were defamatory:

"The said article contained the following false statements of material fact:

"A. 'Until last week Lonsdale, a Democrat who is trying to unseat incumbent Sen. Bob Packwood, denied that he was on the float trip. . . .'

"B. 'Lonsdale failed to acknowledge that he was on the trip until his whereabouts on Aug. 28 was [sic] confirmed by his ex-campaign manager, Rich McIntyre of Fort Klamath, Ore. Faced with this claim by a former Lonsdale insider, the candidate finally came clean, although he suggested his earlier claim was not [a] deliberate attempt to cover up the facts ...' "[1]

Plaintiff served the Chieftain by hand delivery to the paper's registered agent. Plaintiff's counsel later received information that Swart had received a copy of that complaint. An attorney for the registered agent, however, advised plaintiff's counsel that the agent had not been authorized to accept service for Swart. On May 20, 1993, plaintiff sent a copy of the summons and complaint to Swart by certified mail, nonrestricted delivery.

On June 11, 1993, Swart moved to dismiss the complaint as to him on the ground that he had not been properly served, indeed, that he had not yet been served at all, except by legally inadequate certified mail. The trial court granted

---

[1] The complaint contained allegations of other defamatory statements. Those other statements, however, were stricken from the complaint, and plaintiff does not assign error to that ruling.

that motion. The Chieftain then moved for summary judgment on the ground that the two statements about which plaintiff complained were not defamatory as a matter of law. The Chieftain argued that the two statements were non-actionable editorial opinions and, in any event, had not been published with malice or with reckless disregard for the truth. Plaintiff argued that the statements were matters of fact and that there was sufficient evidence to take the case to the jury on the question of malice. The trial court ruled in favor of the Chieftain, concluding that the statements were merely editorial opinions and that they had not been published with malice. The trial court then entered judgment dismissing the claims against both defendants.

■    On appeal, plaintiff first assigns error to the trial court's dismissal of Swart on grounds of defective service. We review the dismissal under ORCP 21 A(5) for errors of law. *Smith v. Wells*, 128 Or App 492, 497, 876 P2d 850 (1994).

■    Plaintiff begins by arguing that Swart waived any defect in service by complaining that service had been "improper." According to plaintiff, ORCP 21 A(5) allows dismissal only for "insufficiency of summons or process or insufficiency of service of summons or process," not for "impropriety" of service, which was the subject of Swart's motion to dismiss. The rules do not require such a rigorous incantation of "magic words." From the arguments asserted to the trial court, it is clear that Swart was asserting grounds properly before the court under ORCP 21 A(5).

■    Plaintiff next argues that, because Swart did not predicate his motion on a lack of personal jurisdiction, he has further waived his right to complain about service defects. In essence, plaintiff's argument is that dismissal is not allowed for insufficiency of service under ORCP 21 A(5) unless a defendant also moves for dismissal on personal jurisdiction grounds. That argument finds no support in the language of the rule; indeed, were it correct, it would deprive ORCP 21 A(5) of any significance. *See Edwards v. Edwards*, 96 Or App 623, 773 P2d 809 (1989), *aff'd* 310 Or 672, 801 P2d 782 (1990). We reject it without further discussion.

■■    Plaintiff argues that, in any event, service on Swart was sufficient. Although plaintiff concedes that service by

certified mail does not satisfy the requirements of any method specifically authorized by rule, he contends that service by that method nevertheless was reasonable under the circumstances. In the alternative, he argues that, even if the service was technically deficient, the fact remains that Swart received actual notice of the claims against him, and, under ORCP 7 G, actual notice suffices. Swart argues that we rejected the same arguments in *Murphy v. Price*, 131 Or App 693, 886 P2d 1047 (1994), *rev den* 321 Or 137 (1995). Swart is correct.

■ In *Murphy*, the plaintiff attempted to serve the defendant simply by mailing a copy of the summons and complaint by certified mail, unrestricted delivery, to an address given by the defendant. Because the notice had been mailed without requesting restricted delivery, anyone at that address could have signed for its receipt. In fact, in *Murphy*, the defendant's landlord signed for the letter and ultimately delivered it to the defendant. We held that, in accordance with the two-part test of sufficiency of service articulated in *Baker v. Foy*, 310 Or 221, 228-29, 797 P2d 349 (1990), when service does not meet the requirements of a method specifically authorized by rule, sufficiency turns on whether the method used was reasonably calculated to apprise the defendant of the pendency of the action, in the light of the totality of the circumstances as they were known to the plaintiff at the time. *Murphy*, 131 Or App at 696-97. We held that, because the plaintiff had sent the notice by unrestricted delivery and had no basis for knowing who would sign for the receipt of the mail, the attempted service did not meet the reasonable notice standard. *Id.* We further held that the fact that the defendant received actual notice of the claim did not permit us to disregard the insufficiency of the service. *Id.*

Plaintiff makes no attempt to distinguish *Murphy*. His only reply is to assert that under ORCP 7 G, because Swart actually received a copy of the summons and complaint, we are required to disregard any errors in the service. We rejected that argument in *Murphy*, as did the Supreme Court in *Jordan v. Wiser*, 302 Or 50, 58, 726 P2d 365 (1986) ("actual notice is not enough to trigger the application of ORCP 7 G"). *See also Levens v. Koser*, 126 Or App 399, 404,

869 P2d 344 (1994); *Luyet v. Ehrnfelt*, 118 Or App 635, 639 n 8, 848 P2d 654 (1993). We do so again in this case.

Plaintiff's second assignment of error is that the trial court should not have granted the Chieftain's motion for summary judgment. He argues that the trial court was wrong in characterizing the two statements at issue as opinions. He argues that the trial court also was wrong in concluding that there was not a genuine issue of material fact as to whether the Chieftain acted with malice. The Chieftain argues that, taken properly in context, the two statements must be regarded as nonactionable opinion. It further argues that there is no evidence that it acted with malice and, for that reason alone, the trial court's decision was correct.

We review the trial court's summary judgment ruling to determine whether there is a genuine issue of material fact and whether the Chieftain is entitled to judgment as a matter of law. ORCP 47 C. We conclude that there is a complete absence of evidence that the Chieftain acted with malice, there is no genuine issue of material fact as to that issue and the trial court correctly granted the Chieftain's summary judgment motion.[2] In the light of that conclusion, we need not address whether the trial court was correct in characterizing the two challenged statements as nonactionable opinion.

In *New York Times v. Sullivan*, 376 US 254, 84 S Ct 710, 11 L Ed 2d 686 (1964), the United States Supreme Court held that the news media are shielded by the First Amendment from liability for publishing defamatory statements about a public figure unless the statements were published with "actual malice." *Id.* at 279-80. Summarizing the Court's holding in *New York Times* and subsequent case law, this court has explained:

> "Malice may be established by evidence that a statement was published 'with knowledge that it was false or with reckless disregard of whether it was false or not,' or 'with [a]

---

[2] ORCP 47 C was amended in 1995. Or Laws 1995, ch 618, § 5. Those amendments define "genuine issue of material fact." *See Jones v. General Motors Corp.*, 139 Or App 244, 911 P2d 1243, *rev allowed* 323 Or 483 (1996). Because we conclude that there was a complete absence of evidence of malice, the Chieftain would be entitled to judgment as a matter of law under both the version of the rule in effect at the time of trial and the amended rule.

high degree of awareness of [its] probable falsity,' or when 'the defendant in fact entertained serious doubts as to the truth of [its] publication.'

"A public official who claims to have been libeled must prove the existence of actual malice by 'clear and convincing proof.' Actual malice is not presumed. Neither may it be inferred from the fact of defamatory publication alone, or from the mere fact that the accusations are of a serious nature.

"Furthermore, plaintiffs' allegations in actions for libel that defendants 'rel[ied] on statements made by a single source,' or failed to verify statements received from an 'adequate news source,' or performed 'slipshod investigation,' have all been rejected as bases for inferring actual malice. In short, reckless conduct amounting to actual malice 'is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing.' Rather, ' "knowledge" or "reckless disregard" is a subjective matter, a question of state of mind, quite distinct from any question of objective reasonableness or prudence.' "

*McNabb v. Oregonian Publishing Co.*, 69 Or App 136, 140-41, 685 P2d 458, *rev den* 297 Or 824 (1984), *cert den* 469 US 1216 (1995) (citations omitted; brackets in original).

In this case, plaintiff concedes that he is a public figure. The only question, therefore, is whether there is sufficient evidence to create a jury question as to whether the Chieftain subjectively knew whether either of the two disputed statements was false or acted in reckless disregard of whether it was false, or that the Chieftain actually had a high degree of awareness that the statements probably were false or that the Chieftain actually entertained serious doubts as to the truth of either of the statements.

Plaintiff contends that there is such evidence in this case. According to plaintiff, Swart admitted that, when he prepared the May 14, 1992, article, he had not asked plaintiff whether he had personally denied having participated in the float trip. From that evidence, plaintiff argues, it is clear that Swart—and, thus, the Chieftain—knew that plaintiff had not, in fact, ever denied having been on the trip and, in spite of that knowledge, accused plaintiff of falsely denying that he had done so. That argument, however, assumes that Swart's

interview of McShea—who did deny plaintiff's participation in the trip—was of no significance. Indeed, the only basis on which plaintiff's argument would make sense is if there were evidence from which it could be found that Swart knew that McShea did not really speak for plaintiff when she denied that he had been on the float trip. Plaintiff, however, points to no evidence that Swart or anyone else at the Chieftain had any reason to doubt that when McShea denied that plaintiff had been on the float trip, she was speaking for plaintiff. At best, therefore, taking the evidence in the light most favorable to plaintiff, the facts show only that the Chieftain might have conducted a more thorough investigation. That is simply not sufficient to establish actual malice. *McNabb*, 69 Or App at 140.

We conclude, therefore, that there is a complete absence of evidence showing that the Chieftain acted with actual malice in publishing the May 14, 1992, article and that, on that basis, the trial court correctly granted the Chieftain's motion for summary judgment.

Affirmed.