Argued and submitted August 9, affirmed November 2, 1994, petition for review denied January 24, 1995 (320 Or 507)

In the Matter of the Marriage of

Debbie C. BOYD,
nka Debbie C. Boyd-Grenbemer,
*Respondent,*

*and*

Michael R. BOYD,
*Appellant.*

(87DM0395; CA A82635)

884 P2d 556

Robert E. Brasch argued the cause and filed the brief for appellant.

David A. Dorsey argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

Landau, J., dissenting.

## EDMONDS, J.

The parties' marriage was dissolved in 1987 and, in this proceeding, mother sought to modify father's child support obligation under ORS 107.135. The trial court granted mother's requested relief after father failed to appear in response to a show cause order. Father's only argument on appeal is that the judgment increasing his obligation is void for lack of personal jurisdiction, because he was never served in accordance with ORCP 7.

Father works throughout the western states as a construction worker and has no permanent address. After the dissolution, he retained an independent bookkeeper to handle his checkbook, collect his mail, pay his child support and pay his personal bills. The bookkeeper performs services for a number of clients. Mother served father's bookkeeper with an Order to Show Cause why the child support award should not be modified. She also mailed a copy of the order to the bookkeeper's office as well as to father's last known address and to his employer. The bookkeeper told father about the order over the phone. Father picked up the order before the scheduled hearing, but did not attend the hearing. When he failed to appear, the trial court granted mother's motion.[1]

Mother contends that ORCP 7D(2)(c), which authorizes office service on an individual who maintains an office for the conduct of business, contemplates service on the bookkeeper under the circumstances of this case. Father contends that he does not maintain an office for the conduct of business within the meaning of the rule and, therefore, the requirements under ORCP 7D(2)(c) for service were not met.

ORCP 7 controls the service of a show cause order under ORS 107.135. ORS 107.135(1). In *Baker v. Foy*, 310 Or 221, 228-29, 797 P2d 349 (1990), the Supreme Court set forth the framework to be used to determine whether service is adequate under ORCP 7. A court must inquire:

"*Question 1.* Was the method in which service of summons was made one of those methods described in ORCP 7D(2), specifically permitted for use upon the particular

---

[1] Father is entitled to assert a jurisdictional defect regarding service for the first time on appeal. *See Henry and Henry*, 301 Or 185, 191, 721 P2d 430 (1986).

defendant by ORCP 7D(3), and accomplished in accordance with ORCP 7D(2)?

"If the answer to *Question 1* is 'yes,' then the service is presumed to be service reasonably calculated, under all the circumstances, to apprise the defendant of the pendency of the action and to afford the defendant a reasonable opportunity to appear and defend. If there is nothing in the record that overcomes the presumption, this is the end of the inquiry. * * *

"If the answer to *Question 1* is 'no,' * * * proceed to *Question 2*.

"*Question 2.* Does the manner of service employed by plaintiff satisfy the 'reasonable notice' standard of adequate service set forth in ORCP 7D(1)?" 310 Or at 228-29. (Footnote omitted; emphasis in original.)

ORCP 7D(2)(c) provides:

"If the person to be served maintains an office for the conduct of business, office service may be made by leaving a true copy of the summons and complaint at such office during normal working hours with the person who is apparently in charge. Where office service is used, the plaintiff, as soon as reasonably possible, shall cause to be mailed a true copy of the summons and complaint to the defendant at the defendant's dwelling house or usual place of abode or defendant's place of business or such other place under the circumstances that is most reasonably calculated to apprise the defendant of the existence and pendency of the action, together with a statement of the date, time, and place at which office service was made. For the purpose of computing any period of time prescribed or allowed by these rules, office service shall be complete upon such mailing."

■■ The issue is whether service on the bookkeeper was service at an office maintained by father "for the conduct of business" within the meaning of the rule. To resolve the issue, we apply the template of statutory construction described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993), to determine the legislature's intent in enacting ORCP 7D(2)(c). The first level of analysis is to examine the text and context of the rule. We conclude that when the language of the rule is considered, either of the parties' arguments is a reasonable application of the rule. Accordingly, we move to the second level of examination,

which is to inquire into the legislative history to determine if the history, when considered with the language of the rule, makes the legislature's intent clear.

■    ORCP 7D(2)(c) was promulgated by the Council on Court Procedures and adopted by the 1979 Legislature. The best indicator of the legislature's intent is found in the statements of the Council that drafted the rule. *See Lake Oswego Review v. Steinkamp*, 298 Or 607, 610, 695 P2d 565 (1985). Regarding what the Council contemplated about ORCP 7D(2)(c), Professor Merrill explains:

> "Service of summons by leaving at a person's office, which is described in ORCP 7 D.(2)(c), was not authorized prior to the adoption of the Oregon Rules of Civil Procedure. Prior to the ORCP, service by leaving at an office was difficult. Even though the employees in a defendant's office might be agents of the defendant, they were usually not agents authorized to receive process or summons for the defendant. The only type of office service allowed was upon a clerk on duty in the office of a registered agent. That form of service also remains in ORCP 7 D.(3)(b)(i).

> "For office service under ORCP 7 D.(2)(c), the person served must maintain an office for the conduct of business. *The location* involved *should be a place accessible to the public where the person to be served conducts a regular occupational activity*. The term 'business,' however, is not used in the sense of a profit-making business. Office service is not limited to corporate or business defendants. Nothing in the rule requires the defendant to own or direct the business, or to be the exclusive occupant of the office.

> "\* \* \* \* \*

> "When viewed in the light of the standard of adequate service in ORCP 7 D.(1), the question of the meaning of 'office' or the proper time of service is not one of technical definition or terms. *The question is whether the person physically receiving the summons would have a business duty to see that the person to be served actually got the summons*. If so, the manner of service would be reasonably calculated to give notice to the defendant." Merrill, *Jurisdiction and Summons in Oregon* 154-55, § 2.10 (1986). (Emphasis supplied.)

■    It is apparent from the legislative history that at least two predicates must exist in order for service under ORCP

7D(2)(c) to occur. First, the person physically receiving the summons must have a business duty to insure that the defendant received the summons. Here, the duties of the bookkeeper arising from her agreement with father imposed that obligation on her. Second, the office must be a location where the person to be served conducts a regular occupational activity. The latter requirement is not met here, because father's occupational activities are performed elsewhere, and it is only his personal activities that are conducted at the bookkeeper's office. We conclude that the answer to "Question 1" is "no."

■　　We proceed to "Question 2." In *Luyet v. Ehrnfelt*, 118 Or App 635, 637-38, 848 P2d 654 (1993), we said:

> "The determination of whether the service was 'reasonably calculated' to apprise defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend is a question of law.
>
> "* * * * *
>
> "Under this rule, the court examines the totality of the circumstances to determine if the service of summons was reasonably calculated to provide a defendant with notice of the action and a reasonable opportunity to appear and defend."

In this case, father employed his bookkeeper on a monthly retainer. The bookkeeper paid his bills, received his mail, reconciled his checkbook and took care of other miscellaneous personal business affairs. The arrangement implies that father maintained regular, frequent and predictable contacts with the bookkeeper. The bookkeeper's office was the only known link to father and was designated by him as a place to receive correspondence relating to his personal affairs. More specifically, the bookkeeper's office was the place from where payment for father's child support obligation was made and where mother had corresponded with father before the modification proceeding regarding their common affairs.

We considered similar facts in two recent cases. In *Duber v. Zietler*, 118 Or App 597, 848 P2d 642, *rev den* 316 Or 527 (1993), we held that service was reasonably calculated to give the defendant notice of a lawsuit where he maintained regular, frequent and predictable contacts with his former

wife for the purposes of picking up his mail and visiting his children. Likewise, in *Gallogly v. Calhoon*, 126 Or App 366, 869 P2d 346, *rev den* 319 Or 149 (1994), we held that service delivered to the home of the defendant's grandmother was reasonably calculated to give the defendant notice of a lawsuit. We noted that the grandmother's address was the only address that could be linked to the defendant, and that the defendant had designated the address as a place to receive professional correspondence.

The analysis in those cases is apt here.[2] Because father's arrangement with the bookkeeper designated her office as the place from where he paid his child support obligation and implicitly where communications were to be directed regarding his child support obligation, the answer to "Question 2" is "yes." Service at the bookkeeper's office afforded the court personal jurisdiction over father, because it was reasonably calculated under all the circumstances to apprise him of the pendency of the modification proceeding and to afford him a reasonable opportunity to appear and defend.

Affirmed. Costs to wife.

**LANDAU, J.,** dissenting.

I agree with the majority that the attempted service on defendant's bookkeeper did not constitute proper "office service" under ORCP 7D(2)(c). I do not agree, however, that the attempted service otherwise was reasonably calculated to apprise defendant of the action as required under ORCP 7D(1). I cannot reconcile the majority's analysis or its conclusion with a number of recent decisions on point. Accordingly, I respectfully dissent.

*Baker v. Foy*, 310 Or 221, 797 P2d 349 (1990), is the starting point for the proper analysis of this case. In *Baker*, the plaintiff served a copy of the summons and complaint on

---

[2] We disagree with the dissent's assertion that the facts in this case are analogous to the facts in *Atterbury v. Wells*, 125 Or App 591, 866 P2d 484, *rev den* 319 Or 80 (1994), and *Levens v. Koser*, 126 Or App 399, 869 P2d 344 (1994). Unlike the facts in those cases, father employed the bookkeeper for the purpose of receiving his mail and taking care of his child support obligations. Because he implicity had designated her as the recipient of correspondence about those matters, that arrangement implies that he had regular contact with her concerning them.

the defendant's mother at her residence and left a copy for the defendant. The defendant had previously lived at that address and continued to receive mail there. The defendant learned of the complaint when he read the copy that had been left with his mother. The Supreme Court held that the attempted service of the defendant in that fashion was not adequate under ORCP 7D(1):

> "In the instant case, defendant's mother was not authorized by defendant to receive the summons on his behalf. Defendant's happenstance reading of the complaint that had been left with his mother while he was making a fortuitous visit to her home is not service 'in a manner reasonably calculated' by plaintiff or plaintiff's attorney to apprise defendant of the existence and pendency of the action against him." 310 Or at 230.

In *Duber v. Zeitler*, 118 Or App 597, 848 P2d 642, *rev den* 316 Or 527 (1993), we contrasted the facts in *Baker* with a record reflecting that the plaintiff left a copy of the summons and complaint with the defendant's former spouse, who told the process server that her former husband returned once a week to visit his children and to pick up his mail, and that she expected to see him in the very near future. On the basis of those facts, we concluded that, unlike the plaintiff in *Baker*, the plaintiff had reason to believe that the defendant would receive the summons and complaint:

> "The undisputed evidence is that defendant maintained regular, frequent and *predictable* contacts with his wife's residence for the purpose of picking up his mail and visiting his children, that the process server knew at the time of service that defendant would be visiting his wife's home in the very near future, and that, at the time of service, defendant had not yet established a permanent address." 118 Or App at 601. (Emphasis in original; citation omitted.)

We applied that rule in *Atterbury v. Wells*, 125 Or App 591, 866 P2d 484, *rev den* 319 Or 80 (1994), in which the process server left a copy of the summons and complaint with the defendant's daughter, Mitchell, who said that she would deliver the papers to her father:

> "[H]ere, in contrast with *Duber*, aside from Mitchell's expressed intention to deliver the documents to defendant, the deputy sheriff knew so little about Mitchell's contacts with defendant that it was not reasonable for plaintiff to

expect that the handing of papers to Mitchell would result in defendant receiving notice of the action. The deputy did not even inquire as to defendant's whereabouts, the frequency or regularity of Mitchell's contact with him, or when Mitchell might deliver the papers to him." 125 Or App at 595.

Finally, in *Levens v. Koser*, 126 Or App 399, 869 P2d 344 (1994), this court held insufficient the service of summons and complaint on the defendant's mother, who told the process server that, although the defendant did not live there, she would deliver the papers to the defendant in the next couple of days. Citing *Baker, Duber*, and *Atterbury*, we held that service was inadequate because the process server knew too little and that there was no evidence of regular, frequent and predictable contact with the defendant's parents. 126 Or App at 403-04.

In this case, defendant retained a bookkeeper to "[h]andle his checkbook, collect his mail, anything having to do with his paperwork," while he was doing construction work on the road. The bookkeeper testified that defendant did not give her instructions about what to do with other mail or papers that she received for him. She said that she did communicate with him about his financial affairs. There is no evidence, however, about when or how often they talked or whether it was by telephone or in person. In fact, she apparently did not know how to get in touch with defendant; she did not have his address, and it was he who telephoned her, not vice versa. When plaintiff left the summons and complaint with her to deliver to defendant, she refused to sign for receipt of the papers. She then waited for him to call in, and when he did, she told him that the papers had been left with her.

In the light of those facts, and the foregoing case law, it is difficult for me to understand the majority's conclusion that service on the bookkeeper was reasonably calculated to apprise defendant of the action against him. As in *Baker*, the bookkeeper was not authorized to receive the summons and complaint; in fact, she *refused* to sign for the papers. Unlike *Duber*, in this case, there is absolutely no evidence that plaintiff, plaintiff's counsel or anyone else knew that defendant had "regular, frequent and *predictable*" contact with the bookkeeper. In fact, on that point, this case is hardly distinguishable from *Atterbury* and *Levens*, in which we held

that the plaintiffs or their process servers knew so little about the nature of the contacts between the defendants and the persons left with the papers that service was inadequate as a matter of law.

The majority vaguely concludes that the evidence permits an inference of regular, frequent and predictable contact. I do not see how that is so. On the basis of the evidence in this record, I cannot tell whether defendant would see the bookkeeper the following day, the following week or the following month. In fact, there is nothing in the record to support the inference that defendant saw her at all. At best, the evidence shows that defendant occasionally and unpredictably telephoned her to check in about his bills.

There is no basis, on the record before us, to conclude that leaving a summons and complaint with defendant's bookkeeper was reasonably calculated to apprise him of the pendency of the action, as required by ORCP 7D(1). Accordingly, I would reverse the trial court.