Argued and submitted November 25, 1996, reversed and remanded
September 10, 1997

Hans HOECK
and Hoeck & Associates,
a limited partnership,
*Appellants,*

*v.*

SCHWABE, WILLIAMSON & WYATT,
a law partnership,
John Guinasso and Mark Stayer,
*Respondents.*

(9409-06750; CA A88827)

945 P2d 534

608

Clayton C. Patrick argued the cause for appellants. With him on the briefs was Patrick & Meadowbrook.

Peter Bunch argued the cause for respondents. With him on the brief were Garr M. King and Kennedy, King & Zimmer.

Before Richardson, Senior Judge, and Landau and Leeson, Judges.

LANDAU, J.

608-b

## LANDAU, J.

Plaintiffs initiated this action for legal malpractice, alleging that defendants failed to provide adequate advice regarding the availability of reorganization under Chapter 11 of the Bankruptcy Code as a means of satisfying creditors without losing certain real property. The trial court entered summary judgment in favor of one of the attorneys on the ground that the action was time barred. The court dismissed the law firm and the remaining attorney after quashing service of the summons and complaint. Plaintiffs appeal, contending that the trial court erred in entering summary judgment and in quashing service of the summons and complaint. We agree with plaintiffs and reverse and remand.

We first address plaintiffs' assignment of error concerning the entry of summary judgment, reciting the facts relevant to that assignment. Following our disposition of that assignment, we address plaintiffs' contentions concerning the trial court's decision to quash service of the summons and complaint, reciting separately the facts relevant to those contentions on appeal. In reviewing the trial court's entry of summary judgment, we view the evidence in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C.

Plaintiff Hoeck & Associates is a limited partnership, of which plaintiff Hans Hoeck (Hoeck) is the general partner. The partnership owned and operated a storage business, and Hoeck had a substantial equity interest in the Morrison Building, in which the storage business was located. Hoeck was purchasing the building from Embarcadero Investments (Embarcadero). Under the terms of the purchase agreement, Hoeck was to make a balloon payment by a predetermined date. When Hoeck could not meet the balloon payment deadline, plaintiffs retained defendant Schwabe, Williamson & Wyatt (Schwabe) and two of its attorneys, defendants Stayer and Guinasso. In a conversation in 1991, Guinasso briefly mentioned to Hoeck the option of bankruptcy. Hoeck understood from that discussion that, if he were to file for bankruptcy, he would "lose everything," but

nevertheless would obtain a "new beginning." Stayer confirmed that conversation in a letter dated June 18, 1991:

> "I wanted to confirm in writing some of our previous conversations where we discussed your various options and alternatives. I know the thought of bankruptcy is distasteful to you, but we mention that option so that you know there is a way to preserve the status quo and prevent a third party from taking action adverse to your interests * * *. Please let us know if you would like to pursue this option."

On July 24, 1991, defendants negotiated a final extension of the balloon payment deadline to October 1, 1991. Defendants advised Hoeck to sign an estoppel deed to Embarcadero, with the understanding that the deed would relinquish all rights to the Morrison Building if he could not obtain financing by the deadline. When the deadline arrived and Hoeck was unable to tender the balloon payment, defendants delivered the estoppel deed to Embarcadero. On October 2, 1991, defendants ceased representing plaintiffs.

A year later, Hoeck spoke with a mortgage broker about the failed Morrison Building transaction. The mortgage broker suggested that Hoeck consult a bankruptcy attorney. Hoeck did that on October 1, 1992. Bankruptcy counsel explained to Hoeck that he could have filed a reorganization plan under Chapter 11 of the Bankruptcy Code at any time prior to the recording of the estoppel deed to Embarcadero, which would have preserved his interests in the Morrison Building.

On September 30, 1994, plaintiffs filed their complaint initiating this action, alleging that defendants were negligent in failing to explain to Hoeck his rights under Chapter 11 of the Bankruptcy Code, both before and after the delivery of the estoppel deed to Embarcadero. Defendants Schwabe and Guinasso obtained judgments of dismissal, which judgments we review presently. Meanwhile, defendant Stayer moved for summary judgment on the ground that plaintiffs' action was time barred, because it was filed more than two years after the alleged professional negligence occurred. In response to the motion, plaintiffs conceded that the action was initiated more than two years after Stayer's

alleged negligence occurred, but argued that the action nevertheless was timely because the complaint was filed within two years of the date that they first learned that Stayer's advice had caused them unnecessarily to lose the Morrison Building. The trial court granted Stayer's motion.

■　　　On appeal, plaintiffs argue that the trial court erred in granting summary judgment to Stayer, because there is at least a genuine issue of material fact as to when they knew or reasonably should have known of the connection between Stayer's inadequate advice and the loss of the Morrison Building. They contend that, before October 1992, when a mortgage broker first suggested consulting with a bankruptcy expert, no one had suggested that Stayer's advice had been anything but correct, and they were entitled to rely on that advice at least until that point. Stayer contends that plaintiffs "had a duty to use due diligence in an effort to discover the facts regarding Stayer's allegedly inadequate advice about bankruptcy, but failed to do so." Stayer does not explain why plaintiffs were not entitled to rely on the advice that they had received; his argument is that, to prevail on the summary judgment motion, plaintiffs were required to offer some affirmative explanation as to why it took so long to find out that Stayer's advice had been incorrect. At the very least, Stayer contends, plaintiffs were on notice that Stayer's advice might have been inadequate when they lost the Morrison Building in October 1991. In a supplemental memorandum, Stayer suggests that his allegedly errant advice was "inherently discoverable."[1]

■　　　In an action for professional malpractice, the applicable statute of limitations is ORS 12.110(1), which provides that the action must be initiated within two years of a plaintiff's injury. *U.S. Nat'l Bank v. Davies*, 274 Or 663, 665-66, 548 P2d 966 (1976). The two-year period, however, is subject to the "discovery" rule for establishing when a claim accrues

---

[1] Stayer does not argue, and we do not address, whether the June 18, 1991, letter, which mentioned the option of bankruptcy as "a way to preserve the status quo," establishes as a matter of law that Stayer did provide adequate advice as to the availability of Chapter 11 reorganization. Stayer's argument is that the June letter demonstrates that he provided plaintiffs "at least some advice regarding bankruptcy as an option" and that plaintiffs have failed to explain why they did not make earlier efforts to inquire about the adequacy of that advice.

for statute of limitations purposes. As the Supreme Court explained in *Stevens v. Bispham*, 316 Or 221, 851 P2d 556 (1993), in a legal malpractice action the statute of limitations does not begin to run

> "until the client knows or, in the exercise of reasonable care, should know, 'every fact which it would be necessary for the [client] to prove * * * in order to support his right to judgment.' Thus, the claim accrues and the statute of limitations begins to run when the client both suffers damage and knows or, in the exercise of reasonable care, should know that 'the substantial damage actually suffered *was caused* by' the lawyer's acts or omissions."

*Id.* at 227 (emphasis in original; citations omitted) (quoting *U.S. Nat'l Bank*, 274 Or at 666-67, 670).

■ Precisely when a person reasonably should have known that the harm suffered was caused by another's negligence generally presents a question of fact. *See Gaston v. Parsons*, 318 Or 247, 256, 864 P2d 1319 (1994) (applying parallel provision of ORS 12.110(4) and holding that "[w]hether a reasonable person of ordinary prudence would be aware of a substantial possibility of tortious conduct is a question of fact"). Still, in some cases, the facts may be such that no triable issue exists as to when a plaintiff knew or should have known that the defendant caused the harm suffered, and, in those cases, the matter may be resolved as a matter of law. *Stevens*, 316 Or at 228.

■■ A plaintiff has a duty to act diligently in discovering relevant facts. *Branch v. Hensgen*, 90 Or App 528, 531, 752 P2d 1275, *rev den* 306 Or 527 (1988). Whether a plaintiff has acted diligently depends on the facts of each case. Of particular relevance in some cases may be the nature of the relationship between the plaintiff and the defendant. In *Gaston*, for example, the plaintiff patient was assured by his physician that the physical symptoms he was experiencing were merely temporary and would abate in six months to two years. The court explained that such assurances

> "may be particularly influential on a plaintiff because the physician-patient relationship is 'a relationship of trust and confidence * * * in which continued treatment or other

resort to the skills of the defendant is required.' If the physician makes a representation on which a plaintiff reasonably relies, it could have the effect of delaying a reasonable person from becoming aware of a substantial possibility of tortious conduct."

*Gaston*, 318 Or at 257 (citation omitted) (quoting *Cavan v. General Motors*, 280 Or 455, 458, 571 P2d 1249 (1977)). The physician's assurance, the court concluded, "raises a genuine issue of fact as to its effect upon a reasonable person." *Id.* at 258.

We turn to the facts of this case, allowing plaintiffs the benefit of every reasonable inference. In this case, as in *Gaston*, plaintiffs and Stayer stood in a relationship of trust and confidence. In the context of that relationship, Stayer gave plaintiffs advice concerning the financing of the purchase of the Morrison Building. Hoeck understood from that advice that he would lose the building if he could not make the balloon payment by the deadline and that he would lose the building if he were to declare bankruptcy. For the next year, nothing put plaintiffs on notice that Stayer's advice was incorrect. Indeed, the loss of the building was entirely consistent with the lawyer's advice. Thus, again paralleling the facts of *Gaston*, the harm plaintiffs suffered was in accord with the assurances of a professional and had the effect of delaying plaintiffs from becoming aware of the substantial possibility that Stayer's advice had been in error. Stayer simply is incorrect in asserting that plaintiffs are obliged to establish more than that to survive a motion for summary judgment. Stayer's contention that the connection between the harm suffered and the alleged inadequacy of his advice is "inherently discoverable" is likewise incorrect. *See generally Gehrke v. CrafCo, Inc.*, 143 Or App 517, 522-24, 923 P2d 1333 (1996), *rev den* 324 Or 560 (1997) (when the plaintiff was injured in a slip-and-fall accident in a retail store, the relationship between the injury and the defendant was "inherently discoverable"). To the contrary, the harm suffered—the loss of the Morrison Building—demonstrated to plaintiffs that Stayer's advice was, if anything, correct.

We conclude that there is a genuine issue of material fact as to when plaintiffs knew or should have known that the

harm they suffered was caused by Stayer's allegedly inadequate legal advice concerning the availability of Chapter 11 reorganization. The trial court therefore erred in granting summary judgment to Stayer.

We turn then to the dismissal of Guinasso following the trial court's decision to quash service of the summons and complaint. By the time that plaintiffs filed their complaint, Guinasso had moved from Schwabe to another firm, Lane Powell Spears & Lubersky (Lane Powell), where he worked as a "contract attorney." The process server had been acquainted with Guinasso "for a number of years," had personal knowledge that Guinasso was employed at the Lane Powell firm and previously had served papers at that firm. On November 23, 1994, the process server went to the main business entrance on the eighth floor of the building in which the firm was located. He asked where he could locate Guinasso and was told to go to the fifth floor. On the fifth floor, the process server met a receptionist, who explained that Guinasso was out of the office for the week and was not in the office that day. The process server recalls that the receptionist said that she would accept service for Guinasso. The receptionist does not directly take issue with that recollection; she testified that the process server "left the papers on the reception desk and walked away." Plaintiffs then mailed a copy of the summons and complaint to Guinasso at the Lane Powell address by certified mail, return receipt requested. Guinasso received the follow-up mailing. Plaintiffs did not attempt to serve Guinasso at his home at any time.

Guinasso moved to quash service of the summons and complaint on the ground that plaintiffs failed to satisfy the prerequisite for office service, namely that there had been an unsuccessful attempt to serve him at home. Plaintiffs responded that the rules do not require such an unsuccessful attempt as a predicate to office service. In the alternative, they argued that service was sufficient to provide reasonable notice even if it failed to satisfy the requirements of the office service rule. Guinasso replied that the service was not adequate, because the process server failed to inquire and establish that the fifth-floor receptionist was apparently in charge of the office and, thus, a person likely to inform Guinasso of

the service. The trial court concluded that unsuccessful service at Guinasso's home address was not required as a prerequisite to office service, but that the attempted service at his office nevertheless was defective, because the process server failed to establish that the receptionist was, in fact, a person apparently in charge and that the service was inadequate to provide Guinasso reasonable notice of the pendency of the action against him.

On appeal, plaintiffs argue that the trial court erred in concluding that service was inadequate. According to plaintiffs, the rules require that office service may be accomplished by leaving a copy of the summons and complaint with a person "apparently" in charge, and there is no affirmative obligation to establish for each office the particular nature of the receptionist's duties. Guinasso contends that the office service was inadequate, both because there was no attempt to serve him at home and because, as the trial court held, there was no attempt to establish the nature of the receptionist's duties with respect to receipt of service papers. Guinasso further contends that service was inadequate to provide him reasonable notice, because the follow-up mailing was sent by unrestricted delivery.

■ Whether service was sufficient presents a question of law. *Abbotts v. Bacon*, 133 Or App 315, 317, 891 P2d 1321 (1995). We accept the trial court's findings of fact, however, if they are supported by evidence in the record. *Beckett v. Martinez*, 119 Or App 338, 343 n 2, 850 P2d 1148, *rev den* 317 Or 583 (1993).

In *Baker v. Foy*, 310 Or 221, 797 P2d 349 (1990), the Supreme Court articulated a two-part test for determining the adequacy of service under ORCP 7. First, we must determine whether the method used was permitted by ORCP 7 D(3) and was accomplished in accordance with ORCP 7 D(2). If those requirements are met, service is presumed adequate. If those requirements are not met, then we must determine whether service otherwise is adequate under the reasonable notice standard set forth in ORCP 7 D(1). *Baker*, 310 Or at 228-29.

ORCP 7 D(3) provides, in relevant part:

> "Service may be made upon specified defendants as follows:
>
> "D(3)(a) **Individuals.**
>
> "D(3)(a)(i) **Generally.** Upon an individual defendant, by personal service upon such defendant or an agent authorized by appointment or law to receive service of summons or, *if defendant personally cannot be found at defendant's dwelling house or usual place of abode, then by substituted service or by office service * * *.*"

(Emphasis supplied; boldface in original.) ORCP 7 D(2)(c), in turn, defines "office service":

> "If the person to be served maintains an office for the conduct of business, office service may be made by leaving a true copy of the summons and complaint at such office during normal working hours *with the person who is apparently in charge*. Where office service is used, the plaintiff, as soon as reasonably possible, shall cause to be mailed a true copy of the summons and complaint to the defendant at the defendant's dwelling house or usual place of abode or defendant's place of business or such other place under the circumstances that is most reasonably calculated to apprise the defendant of the existence and pendency of the action, together with a statement of the date, time, and place at which office service was made. For the purpose of computing any period of time prescribed or allowed by these rules, office service shall be complete upon such mailing."

(Emphasis supplied.)

█ In turning our attention first to whether plaintiffs satisfied the requirements of ORCP 7 D(2) and ORCP 7 D(3), we arrive readily at the conclusion that plaintiffs failed to satisfy the requirements of office service. ORCP 7 D(3)(a)(i) plainly allows office service only "if defendant personally cannot be found at defendant's dwelling house or usual place of abode." Plaintiffs made no attempt to serve Guinasso at his home. Therefore, they did not comply with the requirements of ORCP 7 D(3) and are not entitled to a presumption of adequacy of service.[2]

---

[2] Because we hold that the attempted service was inadequate on that basis, we need not address the correctness of the trial court's conclusion that service was

■ There remains the question whether service nevertheless was, in fact, adequate to provide Guinasso reasonable notice of the existence and pendency of the action against him. We determine the adequacy of service in that regard by examining the totality of the circumstances as they were known to plaintiffs at the time of service. *Baker*, 310 Or at 225 n 6; *Murphy v. Price*, 131 Or App 693, 696-97, 886 P2d 1047 (1994), *rev den* 321 Or 137 (1995).

We have held that service on a third person may be adequate under ORCP 7 D(1) if the process server has reason to believe that the person with whom the summons and complaint have been left has regular, frequent and predictable contact with the defendant. In *Duber v. Zeitler*, 118 Or App 597, 601, 848 P2d 642, *rev den* 316 Or 527 (1993), for example, we held that service was adequate under ORCP 7 D(1) when made on the defendant's former wife, with whom the defendant had "regular, frequent and *predictable* contacts" for the purpose of picking up his mail and visiting his children. (Emphasis in original.) We noted that the process server knew that the defendant would be visiting the former wife's home in the very near future and that, under the circumstances, service on her was sufficient to apprise the defendant of the existence and pendency of the action. *Id.*

Similarly, in *Boyd and Boyd*, 131 Or App 194, 199-200, 884 P2d 556 (1994), *rev den* 320 Or 507 (1995), this court held that service on the defendant's bookkeeper, who was employed to pay the defendant's bills and take care of other miscellaneous personal business affairs, satisfied the reasonable notice requirement of ORCP 7 D(1). The court expressly rejected the contention of a dissenting opinion that the record lacked evidence that the process server had established that the bookkeeper maintained more than infrequent and unpredictable contact with the defendant. *Id.* at 200-03 (Landau, J., dissenting). The court held that "the arrangement implies that [the defendant] maintained regular, frequent and predictable contacts with the bookkeeper." *Id.* at 199.

---

inadequate also because the process server failed to establish affirmatively that the receptionist was "apparently in charge" within the meaning of ORCP 7 D(2)(c).

Finally, in *Gallogly v. Calhoon*, 126 Or App 366, 370-71, 869 P2d 346, *rev den* 319 Or 149 (1994), we held that service on a defendant lawyer's grandmother, at her home, followed by service by regular mail, was adequate under ORCP 7 D(1), because the defendant had designated that address as the place to receive professional correspondence.

■   In this case, the process server left the summons and complaint with a receptionist on the floor of the office where he knew Guinasso regularly worked. He knew that Guinasso was out of the office for one week and that he would be returning to that office in a matter of days. He was acquainted with Guinasso, had personal knowledge of his employment at the Lane Powell firm and previously had served papers at that firm. Plaintiffs then followed up that service with notice by certified mail, return receipt requested.

Under the circumstances, we conclude that the service satisfied the reasonable notice requirements of ORCP 7 D(1). Certainly, the contact between a lawyer and a receptionist on his or her floor entails more than the once-a-week visits that we found adequate in *Duber*. Like the defendant's relationship with his bookkeeper in *Boyd*, Guinasso's relationship with the receptionist on his floor—and her particular knowledge of his whereabouts and schedule—implies that his contacts with her were regular, frequent and predictable. Particularly in the light of the fact that service was made at the address designated by Guinasso as the place to receive professional correspondence, and that plaintiff followed that service with service by mail, as in *Gallogly*, plaintiffs had good reason to believe that Guinasso would be apprised of the existence and pendency of the action against him.

■ ■ Guinasso's argument that the process server was obligated to establish affirmatively that the receptionist had a business duty to receive service is simply incorrect. That was the position of the dissent in *Boyd*, which a majority of the court expressly rejected. Likewise, Guinasso's argument that the follow-up mailing was of no effect, because it was sent by unrestricted delivery, is incorrect. We have held that service by unrestricted mail *by itself* is not adequate to satisfy

the reasonable notice requirement of ORCP 7 D(1). *Lonsdale v. Swart*, 143 Or App 331, 337, 922 P2d 1263 (1996), *rev den* 325 Or 247 (1997); *Murphy*, 131 Or App at 696-98. We have *not* held that follow-up mailing by unrestricted delivery, coupled with other forms of service, cannot suffice. Our decision in *Gallogly*, in fact, expressly held that substituted service followed by service by regular mail was sufficient. *Gallogly*, 126 Or App at 370-71.

We conclude that, based on the totality of the circumstances, the service of the summons and complaint on Guinasso satisfied the reasonable notice requirement of ORCP 7 D(1). The trial court therefore erred in quashing the summons and complaint and in entering a judgment dismissing Guinasso from this action.

Finally, we address plaintiffs' contention that the trial court erred in dismissing Schwabe following its decision to quash service of summons and complaint against that defendant. The same process server who served papers on Guinasso served the summons and complaint against Schwabe. He went to the firm's main business entrance and explained to the receptionist that he had "some papers to leave [with] the firm and needed a partner or agent that could accept service of the summons and complaint." The receptionist "immediately and without hesitation" extended her arm and pointed at Donald Joe Willis, an attorney and shareholder at the firm, who was standing next to the process server at the reception desk. The process server turned to Willis, who refused to take the papers. The process server then placed them on the counter immediately in front of Willis and left. Plaintiffs later sent the firm follow-up service by certified mail, return receipt requested.

Schwabe moved to quash on the ground that service was inadequate. According to Schwabe, there was no evidence that Willis was a registered agent, officer, director, general partner, clerk on duty in the office of the registered agent or other person authorized to receive service for the corporation under ORCP 7 D(3)(b). Plaintiffs argued that, as a shareholder, Willis was authorized to receive service, and, in any event, service upon him satisfied the reasonable notice requirement of ORCP 7 D(1). The trial court held that,

because the firm is organized as a corporation, service on a shareholder was insufficient and follow-up mail by unrestricted delivery did not "cure the defect."

On appeal, plaintiffs argue that they satisfied the requirements of ORCP 7 D(3)(b) regarding service on corporations by delivering the summons and complaint to the receptionist, who was a "clerk on duty in the office of a registered agent." In the alternative, they argue that service upon Willis, followed by service by certified mail, was reasonably calculated to apprise Schwabe of the existence and pendency of the action against it. Schwabe counters that plaintiffs failed to argue to the trial court that they served the clerk on duty at the office of the registered agent and may not do so for the first time on appeal. As for the alternative argument, Schwabe contends that Willis never actually was served and that, even if he were, service was inadequate in the face of

"no evidence in the record that Willis had any regular, frequent, and predictable contacts with Schwabe's registered agent, or that he had any duty to pass along the summons and complaint to Schwabe's registered agent."

Schwabe also contends that the follow-up service by mail has no import, because it was sent by unrestricted delivery.

We have carefully reviewed the record and find no argument to the trial court that the service was valid under the provision in ORCP 7 D(3)(b)(i) that authorizes service on "any clerk on duty in the office of a registered agent." We do not consider that argument for the first time on appeal. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991).

We nevertheless conclude that the service satisfied the reasonable notice requirements of ORCP 7 D(1). As with our review of the service of Guinasso, we review the adequacy of the service on Schwabe in the light of the totality of the circumstances as they were known to plaintiffs at the time of service. *Baker*, 310 Or at 225 n 6; *Murphy*, 131 Or App at 696-97. And, as with our review of the service on Guinasso, we find our decisions in *Boyd* and *Gallogly* especially instructive.

It is undisputed that Schwabe is a professional corporation and that Willis, a lawyer, was a shareholder in the

corporation. The relationship between a shareholder and a professional corporation is significantly different from the relationship between a shareholder and a nonprofessional corporation. A shareholder in a professional corporation is personally liable for negligent or wrongful acts or omissions that he or she commits in rendering professional services on behalf of the corporation, is personally liable for negligent or wrongful acts of persons acting under his or her direct supervision and control and is jointly and severally liable with all other shareholders who are licensed to practice law in this state for negligence or other wrongful acts committed by other shareholders or persons under their supervision and control in the rendering of services on behalf of the corporation. ORS 58.185(2); *see Erwin & Erwin v. Bronson*, 117 Or App 443, 447, 884 P2d 269 (1992), *rev den* 317 Or 271 (1993) (explaining joint and several liability of shareholder in professional corporation under earlier version of ORS 58.185). Although it may be, as Schwabe contends, that plaintiffs did not know with any precision the regularity or frequency of Willis's contacts with the registered agent, officers, directors or managing agent of the corporation, the fact remains that it was highly unlikely that an experienced and competent lawyer who is a shareholder in a professional corporation, and who presumably is aware of the personal and corporate implications of a lawsuit against the corporation, would fail to deliver in short order the summons and complaint to the appropriate management personnel.

Thus, as in *Boyd*, the nature of the relationship between the person served and the defendant implies that service on the former will result in notice to the latter. Moreover, as in *Gallogly*, service at a place known to be the location where the defendant receives its business correspondence, followed by the mailing of the summons and complaint to the same address provided reasonable notice to the defendant. Indeed, if service on the lawyer defendant's grandmother at her residence followed by service by mail sufficed in *Gallogly*, we are hard-pressed to hold, as Schwabe suggests in this case, that service on a lawyer who is a shareholder of the defendant professional corporation followed by service by mail does not likewise suffice.

Schwabe's arguments to the contrary are unpersuasive. That Willis refused service is of no consequence. As we

explained in *Business & Prof. Adj. Co. v. Baker*, 62 Or App 237, 240-41, 659 P2d 1025 (1983):

> "The rules do not require an actual in-hand delivery, or a face-to-face encounter with an acknowledgment of identity from the person to be served * * *. To so require would allow a defendant to defeat service simply by refusing to identify himself or accept the papers. It would make personal service a degrading game of wiles and tricks, rather than a procedure for insuring that a defendant receive actual notice of the subject and pendency of an action."

As for the inadequacy of the follow-up mailing, as we stated with respect to the service of Guinasso, the fact that mail by unrestricted delivery by itself is inadequate does not mean that follow-up mail by unrestricted delivery is of no consequence in determining whether the manner of service in the totality of the circumstances is reasonably calculated to apprise a defendant of the existence and pendency of an action. *Gallogly*, 126 Or App at 370-71.

We conclude that the trial court erred in quashing service of the summons and complaint and in entering a judgment dismissing Schwabe from this action.

Reversed and remanded.