Argued and submitted September 25, 1998, reversed March 24, 1999

# OPTION ONE MORTGAGE CORPORATION,
*Respondent,*

*v.*

# Marsha H. WALL,
aka Marsha S. Ofsthun,
Lyle Wall, aka Lyle Ofsthun
and all others,
*Appellants.*

## (97-80747; CA A99786)

977 P2d 408

Harold D. Gillis argued the cause for appellants. With him on the briefs was Gleaves Swearingen Larsen Potter Scott & Smith.

Jeffrey E. Potter argued the cause for respondent. With him on the brief were Allen E. Gardner and Lombard, Gardner, Honsowetz, Potter & Budge.

Before Landau, Presiding Judge, and Deits,* Chief Judge, and Wollheim, Judge.

WOLLHEIM, J.

---

* Deits, C. J., *vice* Warren, J., retired.

## WOLLHEIM, J.

In this forcible entry and detainer (FED) action, defendants appeal a judgment in favor of plaintiff, Option One Mortgage, pursuant to ORS 86.7559(5), regarding possession of residential real property and an award of attorney fees to plaintiff as the prevailing party. Defendants' first assignment of error asserts that, because service of the notice of the trust deed foreclosure and sale was inadequate under ORS 86.750(1), plaintiff is not entitled to possession of the property as a "purchaser" at the trust deed foreclosure sale, ORS 86.755(5). Because we reverse on that ground, we do not address defendants' other arguments. We also reverse the award of attorney fees, because plaintiff is no longer the prevailing party in the FED action.

Defendant Marsha A. Ofsthun[1] granted plaintiff a trust deed in residential real property in Lane County to secure a loan. Thereafter, plaintiff assigned its rights to a third party. Later, defendants defaulted in their payment obligations, and on December 19, 1996, the notice of trust deed foreclosure and sale was served on Josh Conrow as substituted service on defendants. The proof of service of the notice of sale stated that Conrow "is a person over the age of 14 years and a member of * * * [defendants'] household." In April 1997, the trustee conducted a nonjudicial trust deed foreclosure and sale pursuant to ORS 86.705 through ORS 86.795 and sold the property to plaintiff. Plaintiff brought this action to have defendants and their possessions removed from the property. In defense, defendants asserted that they had not been adequately served with notice of the nonjudicial foreclosure.

Testimony at trial revealed that Conrow was the adult son of defendant Marsha Ofsthun. Conrow arrived at defendants' home in November from Arkansas, where he had been living with his father. Both defendants testified that it was Conrow's intent to move to Eugene to live with either his

---

[1] Marsha Ofsthun was formerly identified as Marsha Wall. Marsha Wall subsequently married Lyle Ofsthun and assumed his last name. When required to refer to her by name, we use the name Marsha Ofsthun, and for convenience, we refer to both Marsha Wall, aka Marsha Ofsthun, and Lyle Ofsthun as defendants.

brother or a friend and find a job there and that Conrow never intended to live in defendants' Lane County home. Defendants explained that, after staying with them for a few days in November, Conrow moved to his brother's house in Eugene. At some point thereafter, Conrow left his brother's house and went to live with a friend in Eugene. Defendants stated that Conrow came back to visit them around the first of December for "at most five days," and that the next time defendants saw Conrow was on Christmas day. Defendants' testimony indicated that Conrow was already residing in Eugene on December 19 and explained that they had no knowledge of how Conrow came to be at their house and was served on that date. Defendants also testified that Conrow had the mental capacity of a five or six year old and had only completed the equivalent of seventh grade. Defendants said that Conrow never gave them the papers served on him. They first learned of the notice of foreclosure and sale in January 1997, when follow-up service was mailed to their home.

Plaintiff first contends that the trial court did not have jurisdiction to consider defendants' challenge to the underlying nonjudicial foreclosure. ORS 86.755(5) provides that the "purchaser at the trustee's sale shall be entitled to possession of the property" and that "[a]ll persons not holding under an interest prior to the trust deed may be removed from possession by following the procedures set out in" the FED statute.[2] Plaintiff points out that, under *former* ORS 46.060(1)(e), the district court had exclusive jurisdiction to decide FED cases but that district courts had no jurisdiction to determine title to property pursuant to *former* ORS 46.084(1),[3] *repealed by* Or Laws 1995, ch 658, § 127. Plaintiff contends that the district court had no authority to *consider* defendants' argument that notice of the foreclosure and sale was inadequate because such an argument would necessarily *decide* the validity of plaintiff's title to the property.

---

[2] The FED procedures set out in ORS 105.105 to ORS 105.168 (1995) apply to this case.

[3] *Former* ORS 46.084(1) provided:

"Except as provided in subsection (2) of this section, while the title to real property may be controverted or questioned in an action in district court, the judgment in the action shall in no way affect or determine title between the parties or otherwise."

That argument mischaracterizes the district court's jurisdiction as well as the disposition it rendered in this case. *Former* ORS 46.084(1) expressly allows title to real property to be "controverted or questioned" but not "*determined*" by the district court. (Emphasis added.) Indeed, an FED court has authority to consider issues regarding title "insofar as necessary for determination of possession," but the judgment may not determine how those issues affect title. *Lawton v. Simpson,* 133 Or App 489, 492, 891 P2d 1371 (1995). Here, the district court did not determine the validity of plaintiff's title. Rather, the court entered a judgment granting plaintiff possession and considered arguments regarding the validity of plaintiff's title in determining its right to possession under ORS 86.755(5). Therefore, defendants' arguments were properly argued and preserved at trial and are correctly before us on appeal.

"Whether service was sufficient presents a question of law." *Hoek v. Schwabe, Williamson & Wyatt,* 149 Or App 607, 615, 945 P2d 534 (1997). We accept the trial court's findings of fact "if they are supported by evidence in the record." *Id.* ORS 86.750(1) requires that the notice of trust deed foreclosure and sale "*shall be served* upon an occupant of the property described in the trust deed in the manner in which a summons is served *pursuant to ORCP 7 D(2) and 7 D(3)* at least 120 days before the day the trustee conducts the sale." (Emphasis added.) We initially note that the two-part test for determining the adequacy of service under ORCP 7 articulated in *Baker v. Foy,* 310 Or 221, 228-29, 797 P2d 349 (1990), is not applicable to service of a notice of foreclosure and sale under ORS 86.750(1). Under the *Baker* test, we first examine whether the method of service was one of those specifically permitted by and executed in compliance with ORCP 7 D(2) and (3). If not, we then examine whether the manner of service satisfies the "reasonable notice" standard set forth in ORCP 7 D(1).[4] ORS 86.750(1) requires that service of the notice *shall* be made pursuant to ORCP 7 D(2) and ORCP

---

[4] ORCP 7 D(1) provides, in part:

"Summons shall be served, either within or without this state, in any manner reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend."

7 D(3). It makes no allowance for the reasonable notice standard set out in ORCP 7 D(1) on which the second prong of the *Baker* test is premised. Therefore, we examine only "whether the method used was permitted by ORCP 7 D(3) and was accomplished in accordance with ORCP 7 D(2)." *Hoek*, 149 Or App at 615.

ORCP 7 D(2)(b) allows for substituted service to be made

> "by delivering a true copy of the summons and the complaint at the dwelling house or usual place of abode of the person to be served, to any person over 14 years of age *residing* in the dwelling house or usual place of abode of the person to be served. Where substituted service is used, the plaintiff, as soon as reasonably possible, shall cause to be mailed, by first class mail, a true copy of the summons and the complaint to the defendant at defendant's dwelling house or usual place of abode, together with a statement of the date, time and place at which substituted service was made." (Emphasis added.)

The trial court found that "[s]ervice of the notice of trustee's sale upon an occupant of the premises was accomplished by service upon Josh Conrow, the son of * * * Marsha Ofsthun, who at the time of service was an occupant of the premises." Defendants argue that the service of the notice was inadequate because Conrow was not "residing" in their home on December 19. In construing a statute, our goal is to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). We do so by examining the text and context of the statute. *Id.* If that review shows that the statute is ambiguous, only then may we resort to examining legislative history. *Id.* at 611-12.

■ The plain language of the statute at issue here requires more than the mere presence or occupancy of an individual. The 1977 amendments to a predecessor service of summons statute replaced the phrase "who *is* at the abode" with "who *resides* at the abode." Or Laws 1977, ch 877, § 5. "Reside" is defined as "to dwell permanently or continuously: have a settled abode for a time: have one's residence or domicile." *Webster's Third New Int'l Dictionary*, 1930 (unabridged ed 1993). This definition imparts the need for an *intent* to live

in a place for a time or permanently. For example, in *Zimmerman v. Zimmerman,* 175 Or 585, 590, 155 P2d 293 (1945), the court held that to establish residence in a place there must be an intent to live in the place for the time being. Relying on *Zimmerman,* defendants further urge that the legislature intended the term "residing" to be synonymous with domiciling, a more permanent abiding. We need not determine that issue, as the facts of this case do not support any definition of the term "residing." Rather, the evidence in the record supports only an inference that Conrow was present or visiting his mother's home on December 19.

The primary proof offered to support the trial court's finding was plaintiff's proof of service in which it was *concluded* that Conrow was a member of the household. Plaintiff claims the proof of service is *prima facie* evidence of proper service and thus is conclusive on appeal as substantial evidence. ORS 86.780. However, whether Conrow was, indeed, a member of the household or residing at the house is a question of law. Accordingly, plaintiff's recitation is not conclusive. *See Adkins v. Watrous,* 66 Or App 252, 254-55, 673 P2d 572 (1983). We examine whether the *facts* in evidence are sufficient to support the legal conclusion that Conrow was a resident of defendant's home on December 19.

In *Garrow v. Pennsylvania Gen. Ins. Co.,* 288 Or 215, 220-22, 603 P2d 1175 (1979), the court noted that the evidence, while "quite sparse," indicated the plaintiff was "residing in his father's household." There, the plaintiff, his wife and child had been living with the plaintiff's father for about three months and paid $100 in monthly rent. Due, in part, to the length of the stay, along with the absence of any evidence that the arrangement was temporary, the court found the evidence sufficient to indicate residency. *Id.* at 222. While the reasoning in that case is not directly applicable to ORCP 7 D(2), we think it fairly illustrates how plaintiff's proof fails to establish Conrow's residency. The only facts in evidence to support Conrow's residency at the house were his *presence* there on December 19 and the testimony that Conrow moved from Arkansas to Eugene, Oregon, in late November to early December and stayed with defendants for several days during that time. In contrast, the uncontroverted testimony indicated that Conrow never intended to live with defendants,

that his earlier sojourns with defendants were for only a few days, and, most importantly, that he had already moved to another location by December 19. This case is more like *Atterbury v. Wells,* 125 Or App 591, 866 P2d 484, *rev den* 319 Or 80 (1994), where we held that substituted service upon a visiting relative was inadequate service on the defendant. We likewise hold that there is not sufficient evidence to support the trial court's legal conclusion that Conrow was residing at defendants' house on December 19.

Because notice of the underlying sale of the property was inadequate, plaintiffs are not entitled to possession of the property as purchasers at that sale. Therefore, we reverse the district court's judgment for possession in favor of plaintiff. Additionally, we reverse the award of attorney fees because plaintiff is no longer the prevailing party entitled to an award of fees under the trust deed.

Reversed.