Argued and submitted July 1, 1999, reversed and remanded March 8, 2000

## BROWNSTEIN, RASK, ARENZ, SWEENEY, KERR & GRIM, *Respondent,*

*v.*

## John T. PEARSON, *Appellant.*

## (9610-07693; CA A100893)

997 P2d 300

Christopher H. Kent argued the cause for appellant. With him on the briefs were Mark W. Jacobsen, Deena A. Muna and Kent & Associates.

Peter R. Mersereau argued the cause for respondent. With him on the brief were Jason H. Eaton and Mersereau & Shannon.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

Plaintiff is a law firm. It filed an action against defendant to collect fees that defendant allegedly owed it. Defendant counterclaimed for negligence and breach of fiduciary duty. The trial court granted plaintiff's motion for partial summary judgment on defendant's counterclaims and entered judgment on those counterclaims pursuant to ORCP 67 B. We reverse and remand.

Because this case arises on plaintiff's summary judgment motion, we state the facts in the light most favorable to defendant. *See Olson v. F & D Publishing Co., Inc.*, 160 Or App 582, 584, 982 P2d 556 (1999). Defendant was the president of Consolidated Rock Products, Inc. Consolidated leased equipment to run its business from Eucon Corporation, and Eucon took a security interest in all of Consolidated's equipment, assets, receivables, and inventory. A dispute arose between Consolidated and Eucon over the leased equipment. In 1988, Eucon filed a complaint against Consolidated in state circuit court, alleging that Consolidated had breached the lease. Eucon also obtained a temporary restraining order (TRO) that "restrained [Consolidated's] business activities." Under the TRO, Consolidated "could not use or sell its inventories of processed rock."

Because Consolidated was having cash flow problems, it needed "a litigation forum to assert its claims against Eucon, and to work a reduction in the monthly payments to Eucon." One of plaintiff's attorneys advised defendant that "a Chapter 11 bankruptcy proceeding would provide the most effective forum to litigate [Consolidated's] dispute with Eucon and to force Eucon to reduce the monthly lease payments." Based on the attorney's advice, defendant chose to file for bankruptcy rather than oppose the TRO in circuit court. As a result of the bankruptcy, debts that Consolidated owed defendant were discharged; defendant had to repay preferences he had received from Consolidated; and when Consolidated was liquidated in 1989, defendant purchased its assets, inventory, and accounts receivable.

Although defendant experienced unanticipated losses in the bankruptcy proceeding, his attorney "told [him]

that the result we had obtained as a result of the bankruptcy proceeding was at least as good as we could have expected had [Consolidated] not filed for Chapter 11 Bankruptcy." After the bankruptcy, defendant continued to employ plaintiff as his counsel. One of plaintiff's attorneys helped defendant form a new company, which continued to operate the rock quarry. That attorney acted as the counsel for defendant's new company until 1995 and also represented other business entities owned by defendant during that time.

In 1996, plaintiff filed an action against defendant, seeking payment for work that plaintiff had done between 1986 and 1991. Defendant consulted another attorney in 1997, and, according to defendant, learned for the first time that plaintiff's allegedly negligent advice had caused the losses that defendant had experienced in the bankruptcy proceeding. Defendant accordingly counterclaimed for professional negligence and breach of fiduciary duty. Specifically, defendant alleged that plaintiff negligently advised him to file for bankruptcy rather than defend against Eucon's claim in circuit court. He did not allege that plaintiff was negligent in the way it handled the bankruptcy proceedings.[1]

Plaintiff moved for partial summary judgment on defendant's counterclaims on two grounds. It argued primarily that defendant's counterclaims were time barred. It also argued that the damages defendant sustained as a result of filing for bankruptcy were less than the damages he would have sustained had he opposed the TRO. It followed, plaintiff reasoned, that defendant could not prove either a breach of duty or damages.

In response to plaintiff's motion, defendant submitted affidavits stating that he had been damaged as a result of plaintiff's advice to file for bankruptcy. His new attorney also submitted an affidavit pursuant to ORCP 47 E, in which he stated:

"4.. Defendant has retained an unnamed, qualified expert who is available and willing to testify to admissible facts or opinions creating questions of fact, which, if

_____

[1] Defendant's claim for breach of fiduciary duty is based on the same facts as his claim for professional negligence.

revealed by affidavit would be a sufficient basis for denying plaintiff's motion * * * for summary judgment on the basis that '[defendant] cannot muster sufficient evidence presenting genuine issues of material fact on the elements of breach or damages,' * * *

"5. Defendant's bankruptcy expert will testify in part [that] he has reviewed the Consolidated * * * bankruptcy file and that plaintiff failed to use the care, skill and diligence that would ordinarily be used by lawyers in the community under similar circumstances, including in part that * * *."

(Underscoring in original.) Paragraph 5 of the affidavit goes on to list a series of 12 acts that defendant's former attorney had taken that, in the expert's opinion, established that defendant's former attorney had failed to exercise the "care, skill, and diligence that would ordinarily be used by lawyers in the community under similar circumstances." Paragraph 5 concludes that as a result of those failures "defendant suffered damages as the largest creditor of [Consolidated] and in the form of preference payments repaid to [Consolidated's] bankruptcy estate."

The trial court granted plaintiff's motion for summary judgment on defendant's counterclaims. It did not accept plaintiff's statute of limitations defense. It ruled that, on this record, the question of when defendant should have discovered that his losses were caused by plaintiff's alleged malpractice was a factual issue. It agreed, however, that defendant had failed to establish that he had been damaged by plaintiff's advice. The court explained that "[d]efendan[t] ha[s] offered no evidence that the result in Clackamas County Circuit Court would have been better than the result in bankruptcy court, which defendant must do to prevail."

On appeal, both parties focus on whether the affidavit that defendant's attorney submitted was sufficient to create a disputed issue of fact.[2] Plaintiff argues that once defendant chose to specify what his expert would say, the trial

---

[2] Under the rules in place when plaintiff moved for summary judgment, defendant had an obligation to create a disputed issue of fact only if plaintiff first submitted evidence to negate one or more of the elements of defendant's counterclaims. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). There is a substantial question whether plaintiff met its burden. We need not decide, however, whether plaintiff's initial showing was sufficient to require defendant to

court was required to presume that the expert would say nothing else. Defendant responds that the inference plaintiff draws is unwarranted. His affidavit made clear that it was setting out part but not all of his expert's testimony. We conclude that the affidavit that defendant submitted pursuant to ORCP 47 E was sufficient to create a disputed issue of material fact.

ORCP 47 E provides:

"If a party, in opposing a motion for summary judgment, is required to provide the opinion of an expert to establish a genuine issue of material fact, an affidavit of the party's attorney stating that an unnamed qualified expert has been retained who is available and willing to testify to admissible facts or opinions creating a question of fact, will be deemed sufficient to controvert the allegations of the moving party and an adequate basis for the court to deny the motion."

We explained in *Moore v. Kaiser Permanente*, 91 Or App 262, 265, 754 P2d 615, *rev den* 306 Or 661 (1988), that an affidavit may create an issue of fact by "stat[ing] only that an expert has been retained and is available and willing to testify to admissible facts or opinions that would create a question of fact." *Accord Stotler v. MTD Products, Inc.*, 149 Or App 405, 408, 943 P2d 220 (1997). The affidavit does not necessarily have to "recite on what issues the expert will testify."[3] *Moore*, 91 Or App at 265. When, however,

"the party enumerates those elements on which the unnamed expert will testify, that enumeration would reasonably lead the defendants and the trial court to believe that plaintiff will not be offering expert testimony on the unenumerated elements. We hold that, when a party chooses to enumerate the elements on which an expert will testify, even though a general assertion would otherwise

come forward with contradictory evidence. Even if it were, the affidavit that defendant's attorney submitted created a genuine issue of material fact. We note that the parties have not asked us to decide whether Oregon Laws 1999, chapter 815, either applies to this case or changes the analysis.

[3] *Stotler* explained that an attorney may be required to specify the elements on which the expert's testimony will create an issue of material fact. *See* 149 Or App at 409 and n 3. An attorney, of course, may always specify the subject of his or her expert's testimony even if he or she is not required to do so.

> satisfy the rule, the enumeration must give notice of *all* elements on which the expert may testify."

*Id.* (emphasis in original).

In this case, plaintiff had argued that summary judgment should be granted because defendant "cannot muster sufficient evidence presenting genuine issues of material fact on the elements of breach and damages." In response, defendant submitted an affidavit that his expert's testimony would create "genuine issues of material fact on the elements of breach and damages[.]" Had defendant stopped there, there can be little doubt that his attorney's affidavit would have created a genuine issue of material fact that would preclude summary judgment. *Moore*, 91 Or App at 265. Defendant, however, went further and set out "in part" the specific testimony that his expert would present on those two elements. Plaintiff argues that, under *Moore*, once defendant specified what his expert would say, the trial court was entitled to conclude that the expert would not say anything else.

We do not read *Moore* that broadly. *Moore* was based on the rationale that, once the affidavit specified that the expert would testify on some elements of a claim, the trial court reasonably could infer that the expert would not testify on others. In this case, the attorney's affidavit makes two propositions clear. First, according to the affidavit, the expert's testimony will create genuine issues of material fact on the elements of breach and damages. Second, the specific opinions set out in paragraph 5 are part but not all of the testimony that defendant's expert will offer on those two elements. Given that wording, the trial court was not entitled to infer that the expert's testimony would be limited to the specific opinions set out in paragraph 5. To be sure, in light of paragraph 4 of the affidavit, the trial court was entitled to conclude that defendant's expert's testimony would create issues of material fact only on the elements of breach and damages. But those elements were the sole basis for plaintiff's motion for summary judgment; the attorney's affidavit was thus sufficient to create a genuine dispute of material fact.[4]

---

[1] Defendant raises a second assignment of error, which requires discussion. Defendant argues that even if plaintiff were not negligent for advising him to file

■  Plaintiff advances an alternate basis for upholding the trial court's ruling. It argues that even if plaintiff's affidavit were sufficient to create a genuine issue of material fact as to damages and breach, defendant's counterclaims were still time barred. Plaintiff reasons that once defendant suffered losses in the 1989 bankruptcy, contrary to what one of plaintiff's lawyers had allegedly told or failed to tell him, defendant should have known that his damages were caused by plaintiff's negligent advice. Because defendant did not bring his counterclaims within two years after experiencing those losses, plaintiff concludes that his counterclaims are barred.

Defendant has alleged that he did not actually know that plaintiff's negligence caused his losses until he spoke with his new counsel in 1997. The question thus reduces to whether he should have known before then that his damages were caused by his lawyer's negligence. *See Stevens v. Bispham*, 316 Or 221, 851 P2d 556 (1993) (defining when a claim for legal malpractice accrues); *Hoeck v. Schwabe, Williamson & Wyatt*, 149 Or App 607, 612, 945 P2d 534 (1997) (same). On that point, the Supreme Court has explained, in the context of a medical malpractice claim, that a physician's assurances bear on the question whether the plaintiff reasonably should have discovered that his or her injuries were caused by the physician's negligence. *Gaston v. Parsons*, 318 Or 247, 257-58, 864 P2d 1319 (1994). In *Gaston*, the patient lost the use of his arm after an operation but had not been warned that that loss was a possible risk of the surgery. The court held that, in light of the physician's later assurances that the loss was temporary, the question

---

for bankruptcy, plaintiff handled the bankruptcy proceeding negligently. Defendant did not allege that specification of negligence in his counterclaims but contends that the pleadings should be amended to conform to the affidavits he submitted in opposition to summary judgment. *But see Finney v. Bransom*, 143 Or App 154, 164-65, 924 P2d 319 (1996) (trial court retains discretion to deny amendment under ORCP 23 B), *rev'd in part and aff'd in part on other grounds* 326 Or 472, 482-83, 953 P2d 377 (1998). Even if defendant intended to add a new specification of negligence when he submitted his affidavits, a proposition that is somewhat obscure, he points to no place in the record where he objected to the entry of summary judgment on the ground that plaintiff's handling of the bankruptcy proceeding was itself negligent. If defendant wants to amend his counterclaims to add a new specification of negligence, then he may ask the trial court for leave to do so on remand. *See* ORCP 23 A.

whether the patient should have known that his loss was a result of the physician's negligence was a factual question for the jury.

*Gaston*'s reasoning applies equally here. *See Hoeck*, 149 Or App at 613. Plaintiff and defendant stood in a relationship of trust and confidence. A factfinder could reasonably conclude that defendant reasonably relied on plaintiff's assurances that the result he had obtained was "at least as good as we could have expected had [Consolidated] not filed for Chapter 11 Bankruptcy." Even if defendant could have questioned his attorney's assurances, the question whether he should have done so is, on this record, an issue for the factfinder. The trial court correctly ruled that plaintiff's statute of limitations defense did not entitle it to summary judgment. It erred, however, in holding that the affidavit defendant's attorney submitted was not sufficient to create a disputed issue of fact on the elements of breach and damages.

Reversed and remanded.