Argued and submitted January 6, 2020, reversed and remanded June 30, petition for review denied September 16, 2021 (368 Or 561)

WILLAMETTE RIVER I,
an Oregon general partnership; and
Justin Barton, individually and as
a general partner in Willamette River I,
*Plaintiffs-Respondents,*

*v.*

Jean-Pierre BOESPFLUG,
an individual,
*Defendant-Appellant.*

Multnomah County Circuit Court
121114501; A168976

494 P3d 980

Plaintiffs filed an action to expel defendant from their partnership by judicial determination. Plaintiffs attempted to serve defendant at the business for which he was the registered agent. However, plaintiffs were told by the person in charge there that defendant had no contact with the business. Plaintiffs also mailed copies of the summons and complaint to the address known for defendant. Having left the United States for his home country of France, defendant did not receive the summons or appear in the action, and a default judgment was entered against him. Several years later, defendant sought under ORCP 71 to set aside the default judgment against him on the ground that he had not been properly served in the action. The trial court denied defendant's motion, concluding that, though service was defective, according to ORCP 7 D(1), it was nevertheless reasonably calculated under the circumstances to apprise defendant of the action against him. Defendant assigns error to that denial. He contends that the court erred in concluding that he had been properly served. *Held*: The Court of Appeals concluded that defendant had not been properly served where plaintiffs received no objectively reasonable indication that defendant had regular, frequent, or predictable contact with the person or places served and thus had no assurance that he would receive the papers.

Reversed and remanded.

Thomas M. Ryan, Judge.

Christopher K. Dolan argued the cause for appellant. Also on the briefs were Russell D. Garrett and Jordan Ramis PC.

Robert B. Lowry argued the cause for respondents. Also on the brief were Susan T. Alterman, Scott J. Aldworth, and Kell, Alterman & Runstein, L.L.P.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

ARMSTRONG, P. J.

Reversed and remanded.

**ARMSTRONG, P. J.**

Plaintiffs filed an action to expel defendant from their partnership by judicial determination and undertook to serve defendant in the action. Defendant did not appear in the action, and a default judgment was entered against him. Several years later, defendant sought under ORCP 71 to set aside the default judgment against him on the ground that he had not been properly served in the action. The trial court denied defendant's motion, concluding that defendant had been properly served under ORCP 7 D(1). Defendant appeals, contending that the court erred in concluding that he had been properly served. We agree with defendant and, accordingly, reverse the order denying defendant's motion.

## I.  BACKGROUND

Except where noted, the material facts are undisputed. Defendant Boespflug and plaintiff Barton began working together in the real estate investment business roughly 30 years ago. As part of their business strategy, Barton and defendant—who is a dual citizen of France and the United States—created various entities to acquire and hold investment properties, including plaintiff Willamette River I, an Oregon general partnership. In November 2012, plaintiffs filed an action seeking a judicial determination that defendant had become incapable of performing his duties under the partnership agreement and, consequently, should be expelled from the partnership. ORS 67.220(5); ORS 67.220(7).

Barton was the managing partner of Willamette River I, and defendant was a partner. According to plaintiffs' November 2012 complaint, defendant failed to provide financial documents related to the partnership's loan obligations. Plaintiffs alleged that defendant had not responded to letters, phone calls, or emails requesting the required documents. Plaintiffs also alleged that defendant had fled his home in Idaho as a fugitive from an Idaho warrant for his arrest and that defendant had "left the United States."

Plaintiffs unsuccessfully attempted personal service of the summons and complaint at the Idaho addresses known for defendant. Later, a Valley County, Idaho, sheriff's

deputy served those documents on a person apparently in charge at the offices of Tamarack Resort—an Idaho ski resort of which defendant was a majority owner. Defendant was listed with the Idaho Secretary of State as the registered agent for the resort. In the return of service, the deputy documented that the person in charge had stated that he did not have "anything to do with [defendant]," but that the person ultimately had accepted service. Lastly, a process server mailed by first-class mail copies of the summons and complaint to defendant at Tamarack Resort and at four other Idaho addresses, which, as plaintiffs have asserted, were the only known addresses for defendant.

Defendant failed to timely appear in the action. As permitted by ORCP 69, plaintiffs moved the court for a default order against defendant, which the court entered. The court subsequently entered judgment against defendant in April 2013, declaring him incapable of performing his duties according to the partnership agreement and expelling him from the partnership. It later entered a supplemental judgment setting $57,000 as the price at which plaintiffs could purchase defendant's interest in Willamette River I. Plaintiffs made monthly installment payments of the purchase price to defendant's bank account until the bank notified them that the account had been closed.

Four years later, defendant filed an answer to plaintiffs' complaint. He also moved under ORCP 71 B(1)(d)[1] to set aside the default judgment that had been entered against him. In supporting memoranda, defendant argued, among other things, that the judgment was void for lack of personal jurisdiction over him because he had not been served as required under ORCP 7 D, the pertinent parts of which we set out later in this opinion. Defendant stated that he had been living in France, his country of origin, and asserted that plaintiffs should have obtained information concerning defendant's whereabouts by contacting defendant's wife, whom Barton had contacted before. Defendant also argued that plaintiffs should have subpoenaed defendant's bank to

---

[1] The title of defendant's motion refers to ORCP 71 B(1)(a) and (1)(c). However, the body of the motion and defendant's supporting memorandum referred to and discussed only ORCP 71 B(1)(d).

determine whether defendant had provided the bank with a new address. In defendant's view, plaintiffs also should have made inquiries throughout France or, alternatively, asked the trial court to order service of him by publication.

Plaintiffs responded by asserting that service on defendant at Tamarack Resort had been proper under ORCP 7 D(2)(c), which provides the procedure for service where "the person to be served maintains an office for the conduct of business." Office service is completed "by leaving true copies of the summons and the complaint *** with the person who is apparently in charge." *Id*. ORCP 7 D(2)(c) also requires a follow-up mailing of the summons and complaint by first-class mail. Plaintiffs reasoned that defendant "maintain[ed] an office for the conduct of business" at Tamarack Resort because the Idaho Secretary of State listed him as the registered agent for the resort there, and the person appearing to be in charge, despite disavowing contact with defendant, had accepted service.

Plaintiffs further argued that, even if office service was inadequate, mailing five copies of the summons and complaint to defendant's Idaho addresses was, under the circumstances, "reasonably calculated" to notify defendant of the action, thereby satisfying the service requirement in ORCP 7 D(1). Plaintiffs maintained that defendant's whereabouts were unknown and that defendant was at fault for failing to provide people with a forwarding address for him.

Lastly, plaintiffs asserted as an alternative argument that defendant's motion to set the judgment aside was moot because defendant had accepted plaintiffs' payments to purchase his interest in Willamette River I.

The trial court rejected plaintiffs' mootness argument, but it denied defendant's motion to set aside the judgment. It concluded that office service under ORCP 7 D(2)(c) had been inadequate because defendant had not been "significantly involved in the [Tamarack Resort] *** in the years immediately" before the attempted service there, and thus, defendant could not be said to have "maintained an office for the conduct of business" at that location. The court concluded, however, that the efforts employed by plaintiffs

made to serve defendant were nonetheless effective under ORCP 7 D(1), stating:

> "[Service] was quite reasonably calculated in its totality to inform defendant of the existence of the action and give [defendant] an opportunity to defend. Service was done as described above in person at the prior business office address and by follow-up mail to all five addresses known to plaintiffs. There was no evidence that plaintiffs knew of any other address. 'France' is not an address. Under these circumstances, especially considering that defendant was not responding to communication from the plaintiffs whatsoever, more was not required."

Defendant appeals, assigning error to the order denying his motion to set aside the judgment. He renews his argument that he was not properly served and, consequently, that the trial court did not have jurisdiction to enter a judgment against him. Defendant reasons that none of plaintiffs' efforts to serve him were reasonably calculated to apprise him of the action. Plaintiffs reprise the arguments that they made below, adding that, if service was improper, we should nonetheless affirm the trial court on the ground that defendant is judicially estopped from denying the validity of the default judgment. Defendant responds that judicial estoppel does not apply because he had no notice of the judgment when he accepted payments from plaintiffs. We address those arguments in turn.

## II.  DISCUSSION

### A.  *Adequacy of Service*

Whether service was adequate is a legal question. *Hoeck v. Schwabe, Williamson & Wyatt*, 149 Or App 607, 615, 945 P2d 534, 539 (1997). We accept the trial court's findings of fact bearing on that question if they are supported by evidence in the record. *Id*. Under ORCP 4, an Oregon court does not have jurisdiction over a defendant unless the defendant is served with summons in accordance with ORCP 7. *McCall v. Kulongoski,* 339 Or 186, 192, 118 P3d 256 (2005). Here, as framed by the parties, the threshold issue is whether service on defendant was adequate under ORCP 7 D(1), which provides, as relevant:

> "Summons shall be served \*\*\* in any manner *reasonably calculated, under all the circumstances*, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend. \*\*\* Service may be made, subject to the restrictions and requirements of this rule, by the following methods: personal service of true copies of the summons and the complaint upon defendant or an agent of defendant authorized to receive process; substituted service by leaving true copies of the summons and the complaint at a person's dwelling house or usual place of abode; office service by leaving true copies of the summons and the complaint with a person who is apparently in charge of an office; service by mail; or service by publication."

(Emphasis added.)

To summarize, ORCP 7 D(1) provides for service "in any manner" that is "reasonably calculated, under all the circumstances," to apprise the defendant of the action. The rule goes on to specify methods of service, *viz.*, personal service, substituted service, office service, service by mail, and service by publication. The requirements for service under each of those methods are set out in ORCP 7 D(2). ORCP 7 D(3), in turn, identifies which methods of service described in ORCP 7 D(2) may be used to serve particular defendants. With that in mind, we turn to whether plaintiffs accomplished proper service on defendant under ORCP 7 D, applying the framework set out in *Baker v. Foy*, 310 Or 221, 227, 797 P2d 349 (1990). *See Davis Wright Tremaine, LLP v. Menken*, 181 Or App 332, 337, 45 P3d 983 (2002) (applying *Baker*).

Under *Baker*, a court must answer two questions. First, was the method of service used to serve the defendant one of the methods identified in ORCP 7 D(2) and was it one authorized under ORCP 7 D(3) to be used with the particular type of defendant? *Baker*, 310 Or at 228. If so, service is "presumptively effective." *Id*. at 228-29. Second, if presumptively adequate service is rebutted or not accomplished, then the court must determine whether the method of service was "reasonably calculated, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and

defend." If the answer to the second question is "yes," then the service requirement in ORCP 7 D(1) is satisfied. *Id.*

Here, the trial court concluded that plaintiffs did not accomplish presumptively valid office service under ORCP 7 D(2), and we agree with that conclusion. Accordingly, the answer to the first *Baker* question is "no." The remaining question is whether, notwithstanding the lack of presumptively valid service, the measures that plaintiffs took to serve defendant were "reasonably calculated, under all the circumstances," to apprise defendant of the action. ORCP 7 D(1).

In answering that question, we are mindful that any construction of ORCP 7 D(1) should complement the service procedures set out in ORCP 7 D(2)—that is, a construction that fulfills the underlying purpose of the rule, which is to provide a defendant with adequate notice of a pending action. We therefore take caution "not to arrive at an interpretation that eviscerates completely the express requirements of a rule of presumed adequacy of service." *Stull v. Hoke*, 153 Or App 261, 270, 957 P2d 173 (1998).

Whether the totality of the circumstances indicates that the chosen method of service was reasonably calculated to give defendant notice of the action depends on what plaintiffs or plaintiffs' process server knew at the time of service. *Baker*, 310 Or at 225 n 6; *Hoeck*, 149 Or App at 617. We have held that service on a third person may be adequate service under ORCP 7 D(1) if the plaintiff has reason to believe that the person to whom the summons and complaint have been delivered has "regular, frequent and predictable contact with the defendant." *Hoeck*, 149 Or App at 617.

Here, plaintiffs contend that personally serving the person in charge at Tamarack Resort, where defendant was listed as the registered agent, was a reliable method of service because plaintiffs "reasonably believed that [d]efendant would maintain some kind of contact with his public address for purposes of fulfilling his duties as a registered agent." Notably, Oregon cases have required greater assurance of notice than that provided by the prospect of "some kind of contact" between the defendant and the person to whom copies of the summons and complaint have been delivered.

For example, the court held in *Baker* that service was not reasonably calculated to give notice to the defendant where the plaintiff served the defendant at his mother's home—a location that was not the defendant's residence or usual place of abode. 310 Or at 223. The plaintiff argued that the service was reasonably calculated to give the defendant notice because, two years earlier, the defendant had represented to the police investigating the accident that had given rise to the action that he lived at his mother's home. The plaintiff further argued that the defendant had later read the complaint when he visited his mother to collect mail that had arrived for him. The court emphasized that, despite what the defendant had represented to the police two years earlier, the defendant's visit to his mother's home had been "fortuitous," and his reading of the complaint had been "happenstance." *Id*. at 230. In sum, the facts known to the plaintiff provided insufficient assurance that the defendant would receive the summons and complaint served on him at his mother's home.

In contrast with the "fortuitous" or "happenstance" circumstances in *Baker*, we concluded in *Hoeck* that service satisfied the reasonable notice requirements of ORCP 7 D(1) where the process server left the summons and complaint with a receptionist at the office at which the defendant worked, and the receptionist accepted service and explained that defendant would soon return. 149 Or App at 618. Additionally, the process server had been acquainted with the defendant for several years and had previously served him at the same location. *Id*. at 614. Further, the plaintiffs later followed up that service with notice by certified mail, return receipt requested, and the defendant had received that mailing. *Id*. We concluded that those circumstances implied that the plaintiffs had been assured that the defendant's contacts with the person whom they served were "regular, frequent and predictable." Additionally, because the plaintiffs had followed up that service with mail service, and the defendant had received the mailing, we determined that plaintiffs "had good reason to believe that [the defendant] would be apprised of the existence and pendency of the action against him." *Id*. at 618.

When evaluating whether service was reasonably calculated to give notice, other cases similarly emphasize the importance of regular, frequent, and predictable contact by the defendant with the service location, and what a plaintiff objectively knows about that contact. In *Boyd and Boyd*, 131 Or App 194, 884 P2d 556 (1994), *rev den*, 320 Or 507 (1995), the mother served papers on the father's bookkeeper. The father did not have a permanent address and employed his bookkeeper on a monthly retainer to pay his bills, receive his mail, reconcile his checkbook, and take care of other personal business matters. *Id*. at 199. We observed that the bookkeeper's office was the place from which payment of the father's child-support obligation was routinely made and where the mother had corresponded with the father about personal matters. *Id*. Under those circumstances, we determined that the father's arrangement with the bookkeeper had "implie[d] that father maintained regular, frequent and predictable contacts with the bookkeeper," and that service was thus reasonably calculated to apprise the father of the action against him. *Id*. at 200.

We considered similar facts in two other cases cited by the parties. In *Duber v. Zeitler*, 118 Or App 597, 848 P2d 642, *rev den*, 316 Or 527 (1993), we held that service on the defendant's wife was reasonably calculated to give notice to the defendant where the defendant's wife told the process server that the defendant visited her "once a week" to pick up his mail and see his children, and that she "expected to see him in the very near future." *Id*. at 599. The wife handed the defendant the served documents a few days later. *Id*. On that basis, we determined that "the process server knew at the time of service that the defendant would be visiting his former wife's home in the very near future," and knew that the defendant "maintained regular, frequent and *predictable* contacts with his wife's residence." *Id*. at 601 (emphasis in original).

Likewise, in *Gallogly v. Calhoon*, 126 Or App 366, 869 P2d 346, *rev den*, 319 Or 149 (1994), we held that personal service at the home of the defendant's grandmother, followed up by service by mail, was reasonably calculated to give the defendant, a lawyer, notice of the action when,

two months earlier, the defendant had provided the grandmother's address to the Oregon State Bar as the address at which he could receive professional correspondence. We noted that, based on what the process server knew at the time, the process server could reasonably have believed that service at the grandmother's home was tantamount to service at the place where the defendant practiced his profession. *Id.* at 370.

Plaintiffs argue that this case is "most analogous" to *Gallogly*. Although there are similarities, this case is distinguishable from *Gallogly* in an important respect. The defendant in *Gallogly* had designated his grandmother's home as the location where he, personally, could receive correspondence when he was legally required to make such a designation. *Id.* at 369 n 1. Here, when Tamarack Resort renewed its organizational articles and named defendant as its agent, the designation represented where *Tamarack Resort*—as opposed to defendant—intended to receive communications. We acknowledge that a public filing listing defendant as the point of contact is no insignificant representation, but what undermines reliance on that listing is what plaintiffs knew at the time of service: that defendant had stopped communicating with Tamarack Resort.

Here, plaintiffs had no assurance that defendant maintained "regular, frequent, and predictable" contact with the person or places at which plaintiffs attempted service. Unlike the receptionist in *Hoeck*—who had provided information about the defendant's schedule, details concerning the defendant's return, and a representation that the defendant would receive the papers—the evidence in this case does not demonstrate that the sheriff's deputy was given any assurance of defendant's contact with Tamarack Resort or its personnel. Instead, quite the opposite occurred. The person in charge at Tamarack told the deputy that he did not have "anything to do with [defendant]" and tried to refuse service. Those circumstances also differ from *Duber*, where the defendant's wife represented to the process server that she would hand the summons to the defendant at his regular weekly visit. Here, no representation was made to the deputy on which plaintiffs could rely that defendant would receive notice of this action.

The circumstances in this case also are distinguishable from those of the bookkeeper's office in *Boyd*, from which the mother had received child-support payments and other mail from the father. Here, plaintiffs represented at oral argument that efforts to correspond with defendant had been unavailing for so long that his failure to respond had compelled this action. The record indicates that, at the time of service, plaintiffs had reason to believe that defendant was avoiding an arrest warrant issued in connection with defendant's financial troubles with Tamarack Resort. That would appear to give plaintiffs a reasonable basis to believe that defendant would *not* maintain contact with Tamarack Resort and its personnel.

Moreover, at the time of service, plaintiffs had alleged that defendant had left Idaho, yet plaintiffs only mailed service documents to defendant's Idaho addresses. To the extent that plaintiffs contend that the mailings to the five known Idaho addresses constitute service reasonably calculated to give defendant notice, we disagree. In the context of ORCP 7 D(2)(d), which provides the procedure for service by mail, the Supreme Court has held that defective service by mail, that is, service that did not comply with ORCP 7 D(2)(d), *may* nonetheless be adequate in light of individual circumstances, "for example, *where a trial court orders that mode of service* as the one most likely to achieve its function and *defendant receives the mail*." *Edwards v. Edwards*, 310 Or 672, 678, 801 P2d 782 (1990) (emphases added). Importantly, "[n]o Oregon case upholds [defective] service of summons by mail as adequate" where the defendant has not acknowledged receipt of the documents. *Id.* at 679.

Plaintiffs neither obtained an order from the trial court authorizing the mode of service that they chose nor submitted evidence that defendant received any of their mailings. Under the circumstances here, the defective service by mail was not reasonably calculated to give defendant notice, where plaintiffs had no indication that defendant had received any of the mailings.

To summarize, under the totality of the circumstances in this case, we conclude that leaving copies of the

summons and complaint with the person in charge at Tamarack Resort, from whom plaintiffs received no objectively reasonable indication that the person had regular, frequent, or predictable contact with defendant, was not service reasonably calculated to apprise defendant of the pendency of the action against him. We further conclude that service by sending, by first-class mail, copies of the summons and complaint to the last known addresses for defendant in Idaho also failed to provide adequate notice of the pending action, where plaintiffs' complaint alleged that defendant had "left Idaho" and "left the United States," and where plaintiffs had no assurance that defendant would or had received the papers. Accordingly, the trial court erred in concluding that defendant had been properly served in the action and, hence, in denying defendant's motion to set aside the judgment for lack of personal jurisdiction over defendant.

B.  *Judicial Estoppel*

Finally, plaintiffs contend that judicial estoppel applies to deny defendant relief from the judgment. Plaintiffs did not assert judicial estoppel as a defense to defendant's motion to set aside the judgment, and the trial court did not consider that defense. Plaintiffs nevertheless urge us to affirm the order denying defendant's motion on the basis of judicial estoppel—that is, on a "right for the wrong reason" basis.

The right for the wrong reason principle permits a reviewing court—as a matter of discretion—to affirm a lower court ruling on an alternative basis that was not raised below when certain conditions are met. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659, 20 P3d 180 (2001). However, we concluded in *Kelley v. Washington Cty.*, 303 Or App 20, 36, 463 P3d 36 (2020), that we lack authority to affirm the ruling of a lower court on a right for the wrong reason basis when that basis "involves an affirmative defense that was never set forth below." There, we stated that judicial estoppel is an affirmative defense that must be raised below and that the facts on which the defense is based must be alleged. *Id.* at 36. Here, because plaintiffs did not raise judicial estoppel in the trial court and, hence,

the trial court did not find the facts necessary to establish it, we reject plaintiffs' alternative argument to affirm the order denying defendant's motion to set aside the judgment.

Reversed and remanded.